## CARSON vs. McDANIEL, for use.

Where suit was brought on a joint promissory note signed by two persons, and one of them pleaded that he was only a surety and had been discharged by reason of the fact that time had been granted to the other defendant, who was the principal, upon a consideration; and where the contesting defendant testified that he signed the note as surety and as principal, and that it was given for fertilizers bought by the other defendant, but he did not testify that he had no interest in the consideration; and where it appeared in evidence that the note was received by another person who delivered it to the payees, and they afterwards placed it in his hands for collection (the suit being brought in his name for their use); that this person called on the other defendant for payment, to which the latter replied that he had nothing to pay with, but intended to plant a crop of watermelons for the next year, and that he would pay the note from the proceeds thereof, and would allow the person holding the note to sell the melons and would pay him

a commission therefor, which was agreed to; and where there was testimony that this arrangement was made known to one of the payees, who said it was all right, but there was no intimation that when it was made known to the contesting defendant he objected to it; and where the holder of the note said he had an interest, but did not tell what it was, there was no abuse of discretion in granting a first new trial, after a verdict in favor of the defendant. Such vague and uncertain evidence will not warrant the reversal of a judgment resting in the discretion of the court. (Rep.)

February 6, 1888.

Promissory Notes. Principal and Surety. New Trial. Before Judge WILLIS. Taylor Superior Court. February Term, 1887.

Reported in the decision.

A. A. CARSON; C. J. THORNTON, for plaintiff in error.

W. S. WALLACE & SON, for defendant.

BLECKLEY, Chief Justice.

McDaniel, as agent for H. Bussey & Co., sold guano or other fertilizers; and a joint promissory note was given by Tomlinson and Carson, payable to H. Bussey & Co. or bearer, for the price. Suit was brought upon that note by McDaniel, for the use of H. Bussey & Co., the payees. Why it was not brought directly by the payees themselves, does not appear. The note being payable to H. Bussey & Co. or bearer, McDaniel could sue for the use of the payees; but there is an awkwardness about it that is not explained. Carson defended upon the ground that he was surety only, and that time had been given to Tomlinson upon a consideration,—that the time of payment had been extended. It appeared at the trial by evidence of Carson himself, that he signed the note as security and as principal. He testified that it was given for fertilizers bought by Tomlinson; but did not testify that he had no interest in the consideration. Precisely what he meant when he said he

signed as security and as principal, we do not know. He did not indicate upon the paper that he signed otherwise than as principal, and the note was a joint-note and not joint and several. It appeared in evidence that McDaniel, after this note was given, turned it over to Bussey & Co.; and that they afterwards placed it in his hands for collection. He says that he called upon Tomlinson to pay it, and Tomlinson told him he had nothing to pay it with, but that he intended to plant a crop of watermelons for the next year, and that he would pay it from the proceeds of the crop of watermelons, and that he would allow McDaniel to sell the watermelons and would pay him a commission for it; and it seems to have been agreed between them that, in consideration of allowing McDaniel to handle the watermelons and get a commission on them, the day of payment was to be postponed until the watermelons were planted, cultivated, matured and sold. McDaniel and Carson both testified that this arrangement was made known to Bussey, and that Bussey said it was all right; but neither of them testifies that when it was made known to Carson, he, Carson, made any objection to it. McDaniel says it was made without Carson's knowledge or consent, but there is no intimation in the evidence that when it was communicated to Carson, he objected to it. Therefore, it is possible that when he mentioned it to Bussey, Bussey understood him to be assenting to it. Of course, if it was agreeable to Carson, and if Bussey was willing to submit to that delay, he had a right to do it. The jury found in favor of Carson; but the court granted a new trial, and that is the error complained of here.

Looking closely at this evidence, we think the court had full power to grant this new trial. It would probably contribute to the ends of justice to try the case again. It needs further ventilation apparently. It is a very curious sort of contract that is set up. And it is very improbable, in the first place, if Carson was good and Tomlinson had nothing to pay with, as he said to McDaniel, that McDan-

iel would ever have made any absolute contract with him by which Carson would be discharged. This note was payable to Bussey, and was Bussey's property. McDaniel said he had an interest, but did not tell what interest. At all events, it was a stipulation for McDaniel to make something by delaying payment on Bussey's note. Bussey was not to get any commissions on watermelons or to have any interest in commissions. The whole transaction is too much in the air to make it a case for the administration of strict law against a court which was exercising its discretion in granting a first new trial. So the judgment is affirmed.